**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 43777**

| | | |
|---|---|---|
| **STATE OF IDAHO,** | ) | **2017 Unpublished Opinion No. 588** |
| | ) | |
| **Plaintiff-Respondent,** | ) | **Filed: September 19, 2017** |
| | ) | |
| **v.** | ) | **Karel A. Lehrman, Clerk** |
| | ) | |
| **BRYCE CODY TRANSUE,** | ) | **THIS IS AN UNPUBLISHED** |
| | ) | **OPINION AND SHALL NOT** |
| **Defendant-Appellant.** | ) | **BE CITED AS AUTHORITY** |
| | ) | |

Appeal from the District Court of the Third Judicial District, State of Idaho, Canyon County. Hon. George A. Southworth, District Judge.

Judgment of conviction for two counts of lewd conduct with a minor under the age of sixteen, <u>affirmed</u>; judgment of conviction for one count of sexual abuse of a child under the age of sixteen, <u>vacated</u> and <u>case remanded</u>.

Eric D. Fredericksen, State Appellate Public Defender; Justin M. Curtis, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Jessica M. Lorello, Deputy Attorney General, Boise, for respondent.

---

GUTIERREZ, Judge

Bryce Cody Transue appeals from his judgment of conviction entered by the district court pursuant to the jury's verdict. Specifically, Transue argues there was insufficient evidence to support his conviction for the sexual abuse of a child under the age of sixteen. Transue further argues the district court erred in permitting the admission of the CARES video interviews of the victims. For the reasons explained below, the judgment of conviction is affirmed in part and vacated in part.

1

# I.

## FACTUAL AND PROCEDURAL BACKGROUND

A grand jury indicted Transue on one count of lewd conduct with a minor under the age of sixteen for acts committed against his then eleven-year-old stepdaughter, A.T., and one count of lewd conduct with a minor under the age of sixteen for acts committed against his then six-year-old daughter, B.T., as well as one count of sexual abuse of a child under the age of sixteen, alleged to have specifically been committed by Transue making genital contact with B.T.'s breasts.[1]

During the third and final trial in this case, the prosecutor asked B.T., "When his milk went onto your chest, what did you do with it?"[2] B.T. corrected the prosecutor by stating, "My stomach." However, the prosecutor introduced into evidence CARES video interviews conducted with both victims. During B.T.'s interview, she indicated that Transue had discharged his semen onto B.T.'s chest area, though she never used the word chest, instead stating that it went, "On my stomach, and right here." The "stomach" and "right here" were identified as separate parts of her body.

The CARES interviews were admitted under Idaho Rules of Evidence 703 and 801(d)(1)(B). Under I.R.E. 801(d)(1)(B), a statement that is consistent with a declarant's testimony and is offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence is deemed not hearsay, assuming certain other requirements are met. Here, the prosecutor argued that defense counsel implied A.T. and B.T. were improperly influenced and incentivized by the prosecutor to lie. The argument centered on defense counsel's questioning A.T. about the number of meetings she had with the prosecutor, as well as on the fact that the prosecutor gave A.T. candy and popcorn. The defense also questioned B.T. about the number of visits she made to the prosecutor's office and about the pink rabbit B.T. received from an employee of that office. The district court agreed with the prosecution that the defense had implied that the prosecutors had improperly influenced the victims.

---

[1] Due to the young age of the victim, both the trial testimony and this opinion will use the terms "breast" and "chest" interchangeably.

[2] At the first trial, the jury was unable to reach a unanimous verdict, resulting in a second trial. The second trial, however, ended in a mistrial due to the prosecutor's failure to disclose statements that were highly prejudicial to Transue.

After the prosecution's case-in-chief, Transue moved for a judgment of acquittal on the sexual abuse charge on the grounds that the prosecution failed to present sufficient evidence that Transue touched B.T.'s chest. The court denied the motion, and the jury found Transue guilty of all three counts. Transue then filed a timely notice of appeal from the judgment, asserting that there was insufficient evidence to support his conviction for sexual abuse of a child under the age of sixteen and that the district court erred in admitting the CARES interviews.

## II.

## ANALYSIS

### A.    CARES Interview

Because the admission of the CARES video interviews pertains to all three counts on which the jury found Transue guilty, we first analyze whether the trial court erred in admitting the CARES interviews into evidence. The decision whether to admit evidence at trial is generally within the province of the trial court. A trial court's determination that evidence is supported by a proper foundation is reviewed for an abuse of discretion. *State v. Gilpin*, 132 Idaho 643, 646, 977 P.2d 905, 908 (Ct. App. 1999). Therefore, a trial court's determination as to the admission of evidence at trial will only be reversed where there has been an abuse of that discretion. *State v. Zimmerman*, 121 Idaho 971, 973-74, 829 P.2d 861, 863-64 (1992).

Hearsay is defined as a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. I.R.E. 801(c); *State v. Gomez*, 126 Idaho 700, 704, 889 P.2d 729, 733 (Ct. App. 1994). Hearsay is inadmissible unless otherwise provided by an exception in the Idaho Rules of Evidence or other rules of the Idaho Supreme Court. I.R.E. 802. However, an out-of-court statement consistent with the declarant's trial testimony, "offered to rebut an express or implied charge against declarant of recent fabrication or improper influence or motive," is not hearsay. I.R.E. 801(d)(1)(B). This rule only permits introduction of out-of-court statements that were made prior to the time the declarant would have a motive to lie. *State v. Joy*, 155 Idaho 1, 14, 304 P.3d 276, 289 (2013). The issue this Court must address is whether there was an implied charge against A.T. and B.T. of recent fabrication or improper influence or motive.

In *State v. McAway*, 127 Idaho 54, 59, 896 P.2d 962, 967 (1995), the Idaho Supreme Court held that a videotaped CARES interview was admissible because the defense attempted to elicit testimony suggesting the victim's mother had spent the three years leading up to the trial

3

"programming" the victim to testify that McAway abused her. The facts in this case are more nuanced, with defense counsel implying that the prosecutor may have improperly influenced the victims. Although neither this Court nor the Idaho Supreme Court has had occasion to address improper influence of children by prosecutors, other states have addressed this issue. *See Stevenson v. State*, 149 A.3d 505, 507, 511-13 (Del. 2016) (admitting videotaped statements pursuant to Delaware Rule of Evidence 801(d)(1)(B) after defense counsel asked more than fifty questions regarding the prosecutor's trial preparation of mother and her children, as well as admitting his true motive--addressing potential coaching--at side-bar); *State v. Barkmeyer*, 949 A.2d 984, 1005-06 (R.I. 2008) (admitting victim's statements under Rhode Island Rule of Evidence 801(d)(1)(B) after defense counsel "both directly and indirectly implied that [child] was coached by the prosecution and the police"); *State v. Jeffcoat*, 565 S.E.2d 321, 323-24 (S.C. Ct. App. 2002) (agreeing with the State that defense counsel implied that victim had been coached, thus opening the door for the admission of prior consistent testimony under South Carolina Rule of Evidence 801(d)(1)(B)); *State v. Burke*, 256 P.3d 1102, 1121 (Utah Ct. App. 2011) (explaining that implication of improper influence, for Utah Rule of Evidence 801(d)(1)(B) purposes, was established when defense counsel elicited testimony from child suggesting that the prosecutors and police officers had told her what to say).

On appeal, Transue argues that defense counsel's questions simply "served to demonstrate efforts made by the prosecutor to prepare" A.T. and B.T. for their testimony and make them comfortable. This argument is belied by statements made by defense counsel at side-bar: "What I'm doing is I'm establishing that these children, that they were encouraged by gifts to testify." Even if we assume defense counsel did not intend to imply recent fabrication or improper influence, I.R.E. 801(d)(1)(B) does not have a scienter requirement; it is proper to admit prior consistent statements if the jury may have been led to believe there was improper influence. The district court relied on a federal case stating as much: "The fact that defense counsel may not have intended to imply that [accuser's] story was fabricated beginning in April 1976 is irrelevant if that inference fairly arises from the line of questioning he pursued." *United States v. Baron*, 602 F.2d 1248, 1253 (7th Cir. 1979), *cert. denied*, 444 U.S. 967 (1979). In this case, it is possible that defense counsel's intent may have been more nuanced, but the implication that the children were improperly influenced with candy and stuffed animals reasonably arose from defense counsel's line of questioning.

4

We hold that because defense counsel's questions implied that the children were improperly influenced, the district court did not abuse its discretion when it admitted the CARES interviews under Rule 801(d)(1)(B). Because we are holding that admission of the CARES interviews was proper under Rule 801(d)(1)(B) and because we vacate the conviction for sexual abuse on other grounds, there is no need to address whether the CARES interviews would also be admissible under Rule 703.

## B. Sufficiency of the Evidence

Transue argues there is insufficient evidence to support his conviction for sexual abuse of a minor under the age of sixteen. Specifically, Transue maintains there is insufficient evidence that his genitals touched B.T.'s breasts.

Appellate review of the sufficiency of the evidence is limited in scope. A finding of guilt will not be overturned on appeal where there is substantial evidence upon which a reasonable trier of fact could have found that the prosecution sustained its burden of proving the essential elements of a crime beyond a reasonable doubt. *State v. Herrera-Brito*, 131 Idaho 383, 385, 957 P.2d 1099, 1101 (Ct. App. 1998); *State v. Knutson*, 121 Idaho 101, 104, 822 P.2d 998, 1001 (Ct. App. 1991). Substantial evidence may exist even when the evidence presented is solely circumstantial or when there is conflicting evidence. *State v. Severson*, 147 Idaho 694, 712, 215 P.3d 414, 432 (2009); *State v. Stevens*, 93 Idaho 48, 50-51, 454 P.2d 945, 947-48 (1969). We will not substitute our view for that of the trier of fact as to the credibility of the witnesses, the weight to be given to the testimony, and the reasonable inferences to be drawn from the evidence. *Knutson*, 121 Idaho at 104, 822 P.2d at 1001; *State v. Decker*, 108 Idaho 683, 684, 701 P.2d 303, 304 (Ct. App. 1985). Moreover, we will consider the evidence in the light most favorable to the prosecution. *Herrera-Brito*, 131 Idaho at 385, 957 P.2d at 1101; *Knutson*, 121 Idaho at 104, 822 P.2d at 1001.

The evidence is allegedly insufficient due to the fact that B.T. never used the word "chest." The pertinent portion of B.T.'s CARES interview that the jury had access to is as follows:[3]

---

[3] The question of whether evidence admitted solely pursuant to Rule 801(d)(1)(B) is admissible as substantive evidence has never been explicitly answered in Idaho. *See State v. McKinney*, 107 Idaho 180, 184-85, 687 P.2d 570, 574-75 (1984). We assume, without deciding, that the CARES video interviews are substantive evidence for purposes of our analysis.

Q: And what was his hand doing?
A: Doing that [masturbation motion].
Q: What was his hand doing that on?
A: Me, on my stomach, and right here [touches her chest, near where a breast would be on an older female].
. . . .
Q: Tell me again where it went, the milk?
A: Right here [gesturing at where cleavage would be on an older female] and on my stomach.

In Transue's motion and brief in support of motion for judgment of acquittal, Transue focused heavily on the fact that B.T. never mentioned her chest and that she went so far as to correct the prosecutor who mentioned B.T.'s chest by explaining that the semen landed on her stomach. Transue asserted that this could not have been mere confusion of anatomical terminology due to B.T.'s young age because she stated that she knew that a bikini top covered a woman's "chest" and that B.T.'s mom had "boobs." Despite Transue's arguments, the district court found there to be sufficient evidence of genital-to-breast contact.

For young victims there is an acceptable threshold of generality when referring to body parts; anatomical precision is not required. *See, e.g.*, *State v. Neyhart*, 160 Idaho 746, 752, 378 P.3d 1045, 1051 (Ct. App. 2016). The jury may have reasonably inferred that B.T.'s correction of the prosecutor when the prosecutor said "chest" was due to B.T.'s young age. It is possible that she could identify chests and "boobs" on adult women, but not think of herself as having a chest. *See, e.g.*, *Pelletier*, 534 A.2d at 972. Additionally, in the CARES video interview, B.T. says the semen landed on "my stomach, and right here," pointing at her chest. While the jury could have inferred that B.T. was indicating that Transue masturbated and discharged onto her stomach *and* her chest area, the sexual abuse charge specified that the crime was committed via genital-to-breast contact, not semen-to-breast contact. Thus, this Court would need to make additional inferences to conclude there was substantial evidence of genital-to-breast contact.

In this case, the jury appears to have inferred genital-to-breast contact from the testimony and evidence presented at trial. Specifically, the nurse testified that A.T. told her that Transue would grab B.T. by the hair and move her head up and down. The district court noted that when Transue was moving B.T.'s head up and down, "perhaps her upper body necessarily followed." Though it is *plausible* that Transue's forceful actions could have resulted in genital-to-breast contact, we disagree with the district court that the jury could reasonably infer genital-to-breast contact occurred in this case.

6

This Court has held there to be sufficient evidence in cases where testimony put on by the State regarding amount of force used, identity of the perpetrator, and intent was disputed by the defendant. *State v. Smith*, 159 Idaho 177, 179-81, 357 P.3d 1285, 1287-89 (Ct. App. 2015); *State v. Glass*, 146 Idaho 77, 85, 190 P.3d 896, 904 (Ct. App. 2008); *State v. Matthews*, 124 Idaho 806, 814, 864 P.2d 644, 652 (Ct. App. 1993). But this case is different. The State did not elicit any testimony regarding genital-to-breast contact. Rather, the State elicited testimony that there was genital-to-mouth and genital-to-stomach contact, as well as semen-to-breast contact. We have held that a jury's implicit inference that physical contact of some sort occurred--based on the victim waking up with her underclothing removed and brassiere unfastened--was sufficient to sustain a lewd conduct conviction. *State v. Gilman*, 105 Idaho 891, 896, 673 P.2d 1085, 1091 (Ct. App. 1983). However, using circumstantial evidence to prove that general physical contact occurred is different than asking a jury to infer physical contact was made with a specific body part solely because surrounding body parts were touched.

Considering the evidence in a light most favorable to the prosecution and allowing for reasonable inferences on the part of the jury, we are constrained to hold that there was not substantial evidence upon which a reasonable jury could have found that the prosecution sustained its burden of proving the essential elements of the crime beyond a reasonable doubt.

### III.

### CONCLUSION

The CARES video interviews were properly admitted into evidence pursuant to Rule 801(d)(1)(B). Disregarding defense counsel's intent, a reasonable juror could have viewed defense counsel's line of questioning regarding candy and stuffed animals as an implication that the victims were improperly influenced to testify in a manner that would please the prosecution. However, neither the contents of B.T.'s CARES video interview nor the witnesses' testimony at trial were sufficient to show sexual abuse of a child under the age of sixteen via genital-to-breast contact. Accordingly, we affirm the judgment of conviction for two counts of lewd conduct with a minor under the age of sixteen, but vacate the conviction for one count of sexual abuse of a child under the age of sixteen and remand for further proceedings consistent with this opinion.

Chief Judge GRATTON and Judge HUSKEY **CONCUR**.

7