UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 95-20498
Summary Calendar
_____


UNITED STATES OF AMERICA,

                                        Appellant,

                    versus

TOMAS VENTE SINISTERRA,

                                        Appellee.

_____

Appeal from the United States District Court for the
Southern District of Texas
_____

(Febuary 21, 1996)

Before GARWOOD, DAVIS and BENAVIDES, Circuit Judges.

GARWOOD, Circuit Judge:

     Appellee Tomas Vente Sinisterra (Sinisterra) is the defendant
in pending criminal proceedings in the district court below in
which he is charged with possession with intent to distribute of
five kilograms or more of cocaine.  The district court granted
Sinisterra's motion to suppress approximately 200 kilograms of
cocaine seized from an unoccupied van in a shopping center parking
lot, and it denied the Government's motion for reconsideration.
This case is now before us on the Government's appeal of the

district court's suppression order.[1]

## Facts and Proceedings Below

The basic facts relevant to the suppression issue are not disputed. Federal agents placed a house located at 7306 Daleview in Houston, Texas, under surveillance based on information that the house was used for drug-related activities. The agents saw Sinisterra arrive in a green Nissan and enter the house. Shortly thereafter, a woman came out of the house and drove the Nissan around the neighborhood, making brief stops at two houses. The agents concluded that the woman was making a "heat run." The woman returned to 7306 Daleview and entered the house. She was inside the house for approximately one minute; then she left and drove away in the Nissan. Sinisterra left the house in a brown Dodge van and caught up with the woman. The brown van and the Nissan drove slowly in tandem for some time; when the Nissan turned off, agents followed the van. Sinisterra drove the van to a shopping mall, Memorial City Mall, parked in the mall's public parking lot, and got out of the van with a small dog. He made a call from a pay telephone and walked around the mall. He went into a Sears Automotive Center and tethered the dog in a service bay. He walked to a nearby medical office building and made another telephone call. After about twenty minutes, he left the medical building and got on a city bus. He rode the bus for about one and one-half

---

[1] A motions panel of this court denied Sinisterra's motion to dismiss the appeal on the grounds that the Government had not timely complied with the interlocutory appeal certificate requirements of 18 U.S.C. § 3731. We agree with the decision of the motions panel as well as with its admonitions to the Government in regard to the certificate requirements of § 3731.

miles, then he got off and began to walk back towards the mall. He stopped at a food store to make a telephone call and then he walked into a residential neighborhood where the agents "lost" him.

The unoccupied van was under continuous surveillance, but no one approached it. Houston police officers walked a trained narcotics-detecting dog around the van, and the dog alerted strongly to the van. An officer then looked into the van's window (without entering or opening the van) and saw two large duffle bags. Two officers left to obtain a search warrant. While the officers were gone, Sinisterra and the woman returned to the parking lot in the green Nissan. Sinisterra retrieved his dog, but he did not go near the van. He drove the Nissan out of the mall parking lot and stopped at a pay telephone in a nearby strip shopping center, about 100 yards away from the van. Agents detained him before he could make a telephone call and asked him to explain his behavior. A Spanish-speaking officer obtained Sinisterra's permission to search the Nissan, but Sinisterra refused to consent to a search of the van. Sinisterra was placed under arrest and the Nissan was searched, but it did not contain any contraband.

By this time, it was night. Andy Fullerton, a U.S. Customs Agent with over twenty years' experience, looked through the windows of the van with a flashlight. Agent Fullerton saw several kilogram-size, cellophane-wrapped packages. One of the packages was marked with a logo and had the name "Lotus" printed on it. Agent Fullerton testified that it was his experience that packages marked in this way always contained either cocaine or marihuana.

3

When the officers who were charged with obtaining the warrant told an assistant U.S. Attorney of Agent Fullerton's discovery, the assistant U.S. Attorney advised that a warrant was unnecessary, and all efforts to obtain a warrant ceased. The van was then towed to the police department where a warrantless search revealed approximately 200 kilograms of cocaine.

After a suppression hearing, the district court held that Sinisterra had standing to challenge the search of the van, a holding the Government does not challenge on this appeal. The district court also determined that the officers had probable cause to arrest Sinisterra, but it held that Sinisterra's relationship to the van at the time of his arrest was too attenuated for the evidence to be admissible as seized in a search incident to arrest. The court held that the plain-view exception to the warrant requirement authorized the officers to seize the van without a warrant, but that they could not search the vehicle without a warrant or consent. Citing *United States v. McBee*, 659 F.2d 1302, 1304 (5th Cir. 1981), *cert. denied*, 456 U.S. 949 (1982), the court held that the automobile exception to the warrant requirement requires both probable cause and exigent circumstances. The court determined that the search was not justified by exigent circumstances because the police had a valid basis to seize the vehicle and, thus, could have obtained a warrant at their leisure.[2]

    In its oral ruling on the motion to suppress, the district court stated "that is not an [sic] in dispute here, whether or not the contraband [in the van] was in plain view provides a basis for the arrest of the defendant. And the answer, I believe, is, yes, that that would provide a basis for the arrest of the defendant"; and, "[t]he whole basis of this defendant's arrest centers, it

4

The court further reasoned that the automobile exception to the warrant requirement did not apply because the van was parked in a privately owned parking lot.[3] Consequently, the district court granted the motion to suppress.

## Discussion

The Government argues, *inter alia*, that the evidence is admissible under the automobile exception to the warrant requirement. We Agree.

This court reviews the district court's fact-findings on a

seems
to me, on the probable cause to arrest, which obviously, in my opinion, existed"; and, "[s]o, the evidence . . . does not suggest that any exigent circumstances existed . . . . the fact that the vehicle itself was seized and was taken to the police lot gives rise to the fact that there was no exigent circumstance, because, in my view, the police had a valid basis for seizing the vehicle and holding it"; further "I think there was probable cause for the arrest, I think there was probable cause for seizures [sic] of the vehicle based upon what they saw and believed to be in the vehicle"; and finally "[t]hey seized the vehicle, which I think they were totally entitled to do, they did not have the right to search it. They were seeking a search warrant, they should have gotten it, that's all." In its written order granting the suppression motion, the court recites that the motion was "granted based on its [the court's] findings and statements in the record and those stated here." The written order further states that "the police officers had probable cause for a detention and arrest and possibly a seizure of the vehicle." It is entirely plain that the district court found that the officers had probable cause to believe that the van (when it was seized and searched) contained narcotics and that <u>that</u>--plus the defendant's association with the van--is what constituted probable cause to arrest the defendant.

The district court also distinguished the result in *McBee*, where suppression was denied, on the basis that there "the vehicle was parked on a public street", while here "unlike *McBee*, the vehicle was not on the public street but on private property". The district court recognized that the mall parking lot, where the van was seized, was open to the public, but felt it was significant that the parking lot was privately owned. The Government urged that the parking lot was a "public area". The district court responded "sure. Anything outside the [mall] building is public, but that's private property" and not "the public streets".

5

motion to suppress for clear error and reviews de novo the "ultimate determination of Fourth Amendment reasonableness." *United States v. Seals*, 987 F.2d 1102, 1106 (5th Cir.), *cert. denied*, 114 S. Ct. 155 (1993). The district court's determination that the search of the van was unreasonable under the Fourth Amendment was based on certain erroneous legal assumptions.

First, the district court concluded that the officers had probable cause to arrest Sinisterra and to seize the van, but that they were prohibited from searching the van without obtaining a warrant. There is no constitutional difference between "seizing and holding a car before presenting the probable cause issue to a magistrate and on the other hand carrying out an immediate search without a warrant. Given probable cause to search, either course is reasonable under the Fourth Amendment." *Chambers v. Maroney*, 399 U.S. 42, 52 (1970).

Second, to the extent that *McBee* and its progeny require, in a situation such as the present, a finding of exigent circumstances other than the fact of the automobile's potential mobility, they are inconsistent with more recent Supreme Court jurisprudence. The Supreme Court has held that the automobile exception to the warrant requirement applies when a vehicle is "readily capable" of "being used on the highways" and it "is found stationary in a place not regularly used for residential purposes . . . ." *California v. Carney*, 105 S.Ct. 2066, 2070 (1985). Under these circumstances "overriding societal interests in effective law enforcement" justify an immediate warrantless search because (1) "the vehicle is obviously readily mobile by the turn of an ignition key . . ." and

6

(2) it is subject to a "reduced expectation of privacy stemming from its use as a licensed motor vehicle subject to a range of police regulation inapplicable to a fixed dwelling." *Id*.

Finally, the district court attached importance to the fact that the car was parked in a shopping center parking lot--rather than on a public street--at the time that it was seized. For the reasons discussed below, this fact is not determinative of the legality of the seizure and subsequent search here.

In *Carney*, the Supreme Court upheld the warrantless search of a motor home parked in a downtown San Diego parking "lot". *Id.* at 2067. Drug Enforcement Agency (DEA) agents had information that Carney and other persons were engaging in sex in the motor home and paying their partners with marihuana. They searched the motor home without a warrant or consent and discovered a quantity of marihuana and drug paraphernalia. The California Supreme Court suppressed the drugs and reversed Carney's conviction for possession of marihuana. The Supreme Court granted certiorari and reversed because it concluded that the automobile exception to the warrant requirement applied. *Id*. at 2070.

This court has concluded that, under *Carney*, "probable cause *alone* suffices to justify a warrantless search of a vehicle lawfully parked in a public place, as long as the scope of the search is reasonable." *United States v. Cooper*, 949 F.2d 737, 747 (5th Cir. 1991) (quotation omitted; emphasis in original), *cert. denied*, 504 U.S. 975 (1992). Sinisterra argues that *Coolidge v. New Hampshire*, 403 U.S. 443, 461-62 (1971), and *United States v. Reed*, 26 F.3d 523, 530 (5th Cir. 1994), *cert. denied*, 115 S. Ct.

7

1116 (1995), dictate that exigent circumstances were required to justify a warrantless search of the van.[4] *Coolidge* and *Reed* are distinguishable because both cases involved vehicles parked in the driveways of the residences of the defendants (who were in custody). *See Coolidge*, 403 U.S. at 447; *Reed*, 26 F.3d at 525. *Carney* controls this case because of the similarity of the factual situations. Here, the mall parking lot was not related to anyone's residence, it was open to the public and available for public use, and Sinisterra had no more right in it than any member of the public. That the lot was owned by the mall--and not by the city-- is irrelevant in these circumstances.[5]

This court has applied the automobile exception to admit evidence seized in warrantless searches of vehicles which were legally parked in privately-owned motel parking lots where there was probable cause to search but no showing of exigent circumstances. *United States v. Buchner*, 7 F.3d 1149, 1150-51, 1154-55 (5th Cir. 1993) (LaQuinta Motel), *cert. denied*, 114 S. Ct. 1331 (1994); *United States v. Ervin*, 907 F.2d 1534, 1536-39 (5th Cir. 1990) (Big Bend Motor Inn Motel). The rule applicable here is that if, under the totality of the circumstances, officers have probable cause to believe that a vehicle contains contraband, they are authorized to search the van without a warrant. *Buchner*, 7

---

Sinisterra does not suggest that the duffle bags should not have been searched incident to the search of the van. *See California v. Acevedo*, 500 U.S. 565, 580 (1991) (containers in an automobile may be searched if there is probable cause to believe that they contain contraband).

Nothing in *Carney* indicates that the parking "lot" there was publicly owned.

8

F.3d at 1154-55; *Seals*, 987 F.2d at 1107.

Here, in addition to the dog alert, the officers were also aware of the informant's tip; Sinisterra's unusual behavior that afternoon; and the fact that Agent Fullerton had recognized that the packages in the van contained narcotics. Probable cause was thus clearly established. *See United States v. Williams*, 69 F.3d 27, 28 (5th Cir. 1995); *United States v. Mendez*, 27 F.3d 126, 129-130 (5th Cir. 1994); *United States v. Hernandez*, 976 F.2d 929, 930 (5th Cir. 1992); *United States v. Gonzalez-Basulto*, 898 F.2d 1011, 1013 (5th Cir. 1990); *United States v. Davila-Avila*, 895 F.2d 206, 207 (5th Cir. 1990).

Because the officers had probable cause to believe that the van--which was in operational condition and was parked in the mall parking lot which was open to the public (at least those shopping at the mall) though not publicly owned--contained narcotics, they were legally authorized to search it without a warrant, even if the circumstances were not exigent.[6] The district court hence erred in granting the motion to suppress.

Accordingly, the district court's order granting Sinisterra's motion to suppress is REVERSED.

---

Because of our holding in this respect, we do not determine whether suppression should have been denied either on the inevitable discovery doctrine or on the theory that the officers acted on the reasonable, good faith belief that a warrant was not required.